236 F.2d 96
 56-2 USTC P 9810
 T. C. RISINGER, Appellant,
v.
UNITED STATES of America, Appellee.
 No. 15901.
 United States Court of Appeals Fifth Circuit.
 Aug. 3, 1956.
Rehearing Denied and Opinion Corrected Sept. 6, 1956.
 
 Mack Taylor, Frank B. Potter, Fort Worth, Tex., Al Clyde, Fort Worth, Tex., for appellant.
 Heard L. Floore, U.S. Atty., Fort Worth, Tex., for appellee.
 Before TUTTLE, CAMERON and JONES, Circuit Judges.
 CAMERON, Circuit Judge.
 
 
 1
 This is an appeal from a conviction on a jury verdict finding appellant Risinger guilty on all five counts of an indictment charging wilful evasion of income taxes for the years 1948, 1949 and 1950 based upon appellant's action in filing false and fraudulent tax returns for himself and his wife in violation of 26 U.S.C.A. (1939) § 145(b). Appellant claims that the Court below committed certain errors in admitting testimony, in failing to charge the jury accurately and adequately, and in failing to acquit appellant because of insufficiency of the evidence to sustain the verdict. Appellant is laboring under the handicap of having failed to take the steps in the Court below which are necessary to permit reliance upon most of the errors charged.
 
 
 2
 During the years 1948, 1949 and 1950 appellant was engaged primarily in the hotel business. The income tax returns filed by him were made from the books and records kept in connection with this business, but did not include income received from any other business or activity. A large amount of testimony was introduced by the Government from which the jury could determine that the porters and bellboys working in appellant's hotels had, by prior agreement with appellant, split the income received by them from the illicit businesses of prostitution and sale of intoxicating liquors carried on by them as an adjunct to the hotel business.
 
 
 3
 This direct proof of receipt of unreported income was supplemented by a large volume of proof establishing, under the net worth method, that appellant had made expenditures during the years in question considerably in excess of the income available to him from all legitimate sources. The Government used a large number of witnesses whose testimony, when recapitulated by the Government's experts, showed that, during 1948, appellant's expenditures exceeded his available income by $7,522.67; in 1949 by $12,273.00; and in 1950 by $8,347.20.
 
 
 4
 In connection with developing this character of proof the Government followed the usual custom of having one of its experts analyze the testimony of the large number of witnesses with whom appellant had had dealings and placing the expert on the stand to gather together the various fragments of testimony and present to the jury the picture resulting therefrom in an understandable and convincing manner.
 
 
 5
 The specifications of error chiefly argued by appellant relate to the evidence given by the porters of money received from the illicit businesses, it being claimed that said evidence was inadmissible and highly prejudicial; and that appellant's motion for mistrial based upon its reception should have been sustained; and to the claim that the Court below committed error in failing to charge the jury with respect to the rule that the unsupported testimony of an accomplice is insufficient to sustain a conviction.
 
 
 6
 The testimony of the porters was not hearsay and was clearly admissible to show that appellant received from them large amounts of money which were not reported as income. Cf. Ford v. United States, 5 Cir., 1956, 233 F.2d 56. There was sufficient direct proof, backed up by circumstantial evidence, that this split was made under prior arrangement with appellant. The Court below was careful to limit the effect of this evidence by charging the jury that it should be considered only as it tended to establish that appellant had received income and that the jury should not consider the illicit or immoral character of its source.[1]
 
 
 7
 Appellant requested orally, after the Court's charge had been completed, that if the jury should believe that the porters and bellboys were accomplices of appellant, his conviction could not be sustained upon the uncorroborated testimony of these accomplices. The Court refused to give that instruction and the refusal was, in our opinion, proper. Appellant was indicted and tried for the crime of wilfully filing false and fraudulent income tax returns. There was no proof or hint that the porters were his accomplices in the crime charged against him. In order for one to be an accomplice he must be concerned in the commission of the specific crime with which the defendant is charged, he must be an associate in guilt of that crime, a participant in that offense as principal or accessory.[2] We conclude, therefore, that the Court did not commit error in connection with the various rulings relating to the testimony of the porters, in overruling the motion for mistrial based thereon or in refusing to give the requested charge predicated upon the assumption that they were accomplices in connection with the crime upon which appellant was convicted.
 
 
 8
 Appellant next argues that the Court below erred in permitting the Government experts, particularly the witness Haskins, to enter into a detailed explanation of the theory and content of the net worth method of developing income tax violations, and in permitting said witness too much latitude in explaining the various items entering into his computations, and in the effort to advance arguments to sustain the charges of the indictment. We have recently reversed a conviction of violation of the income tax laws, basing our decision in part upon what we found to be prejudicial actions and improper evidence by such government experts. Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9. We referred to decisions of the Supreme Court and of this Court wherein words of admonition had been written in connection with the reception of such evidence.[3] A careful reading of the testimony complained of by appellant reveals that quite a few of the questions asked by the Government's attorney were leading and argumentative, and the answers in some instances exceeded the limitations by which the introduction of such evidence is bounded. But we are not able to say that this evidence was clearly prejudicial or that its reception was 'plain error.'
 
 
 9
 Appellant is not in position to stand upon the error asserted in connection with this evidence for the reason that he did not object to it when offered or at any other time. During the extended examination of the government witness Haskins, occupying more than fifty pages of the record, appellant objected only once or twice, and then to the form of the question; and in each instance the Court required that the question be reframed so as to 'avoid any argument in connection with your questions.' Doubtless the Court would have kept the examination completely within legal bounds if called upon by seasonable objection to rule on specific questions and answers. But appellant chose to permit the evidence to go in without objection, thus reaping the benefit which is thought normally to attend such a procedure. Having followed that course, he cannot put the Court below in error for permitting the examination which he did not attempt to halt.[4]
 
 
 10
 Finally, appellant argues that the charge to the jury was not adequate or fair, and that the verdict was not supported by the evidence. Here again appellant elected to take his chances with the jury, not excepting to the charge as given nor requesting any written charges; no motion was made for judgment of acquittal, and no motion for new trial was filed. Appellant is, therefore, not in a position to insist on the errors thus asserted.[5]
 
 
 11
 But we are earnestly importuned to set the judgment aside on the assertion that appellant was not given a fair trial, and that he was convicted on insufficient evidence. Of course, we have the right to notice plain errors affecting the substantial rights of appellant, Rule 52(b), Federal Rules Criminal Procedure, 18 U.S.C.A. But a careful reading of this record does not impel us to give serious consideration to granting such relief here. Indeed, the evidence amply supports the jury's verdict and reflects that the Court below was punctilious in observing every right to which appellant was entitled.
 
 
 12
 Finding no error and being convinced that a just result was reached, the judgment is
 
 
 13
 Affirmed.
 
 
 14
 On Petition for Rehearing.
 
 
 15
 PER CURIAM.
 
 
 16
 The petition for rehearing calls attention to the fact that our opinion filed August 3, 1956 contains the statement, 'no motion was made for judgment of acquittal * * *.' This statement is in error. The parties filed a typewritten stipulation that motions for an instructed verdict were made and overruled at the end of the Government's case and after all of the evidence was in, 'same being based on the defendant's contention that the evidence offered was insufficient to support a judgment of conviction.' The petition for rehearing is granted, therefore, to the extent that the language quoted from the opinion is deleted.
 
 
 17
 We made it plain in the opinion that 'the evidence amply supports the jury's verdict * * *.' A further consideration of the evidence in passing upon the Petition for Rehearing confirms that conclusion. The Court below did not commit error in overruling defendant's motions for an instructed verdict. Except as above set forth, the Petition for Rehearing is
 
 
 18
 Denied.
 
 
 
 [1]
 In ruling on appellant's verbal motion for mistrial the Court stated in part:
 'The case, as we understand it now, is more or less analagous to a case that a man makes money and owes tax on it; if he made it in a criminal enterprise or a gambling enterprise, or in some unlawful transaction, if he got the money and it came to him so that it was his, he should pay the tax on it * * *
 'I am going to instruct the jury at this point, since it is raised in this motion, I will instruct the jury that while a man must pay taxes on the money which comes into his hands, which is his, which he keeps and is his, he may receive it from an immoral or some unlawful source, still he owes the tax. And when he is tried upon a charge of concealing his income so as to evade the payment of a tax, and doing it wilfully and intentionally, he should not be charged with any wrong-doing because of the manner in which he got the money. You are trying him only for not paying the tax, and you will not try him for any immoral conduct, if you believe he was guilty of such. * * * In considering the question of guilt or innocence, don't turn in your mind to the fact that he was doing something unlawful or immoral. The only question is, did he have the money, or did he pay the tax * * *'
 
 
 [2]
 'The generally accepted test as to whether a witness is an accomplice is whether he himself could have been indicted for the offense either as principal or accessory. If he could not, then he is not an accomplice.' 14 Am.Jur. 840-1, Criminal Law, § 110. And see Emmanuel v. United States, 5 Cir., 1928, 24 F.2d 905, certiorari denied 278 U.S. 643, 49 S.Ct. 79, 73 L.Ed. 557; Campbell v. United States, 5 Cir., 1931, 47 F.2d 70; United States v. Balodimas, 7 Cir., 1949, 177 F.2d 485; and 22 C.J.S. Criminal Law, § 786
 
 
 [3]
 Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; Demetree v. United States, 5 Cir., 1953, 207 F.2d 892; and Elder v. United States, 5 Cir., 1954, 213 F.2d 876
 
 
 [4]
 Allen v. United States, 5 Cir., 1951, 192 F.2d 570; Durden v. United States, 5 Cir., 1950, 181 F.2d 496; Medlin v. United States, 5 Cir., 1928, 28 F.2d 663; Metcalf v. United States, 6 Cir., 1952, 195 F.2d 213; United States v. Bender, 7 Cir., 1955, 218 F.2d 869
 
 
 [5]
 Rules 30 and 51 Federal Rules Criminal Procedure; Feutralle v. United States, 5 Cir., 1954, 209 F.2d 159; Williams v. United States, 208 F.2d 447; McDonald v. United States, 5 Cir., 1952, 200 F.2d 502, and Contreras v. United States, 5 Cir., 1954, 213 F.2d 96