**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOHNNY BROWN, AKA Mickey,
*Defendant-Appellant*.

No. 11-30379

D.C. No.
3:06-cr-000385-KI-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
March 3, 2015—Portland, Oregon

Filed May 1, 2015

Before: Raymond C. Fisher, Richard A. Paez
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Fisher

# SUMMARY[*]

## Criminal Law

Affirming a criminal judgment, the panel held that courts have discretion under Fed. R. Crim. P. 23(b) to proceed with 11 jurors after excusing a juror for good cause during deliberations, even when alternates are available.

The panel also held that the district court did not abuse its discretion by proceeding with 11 jurors, where the jury had deliberated for more than a day and had asked and received answers to five substantive questions. The panel wrote that if the court had seated an alternate, it would, under Fed. R. Crim. P. 24(c)(3), have had to direct the jury to begin deliberations anew, adding at least a day to the proceedings and imposing on the jurors the difficult task of discarding any conclusions they had already reached.

## COUNSEL

Michael R. Levine (argued), Levine & McHenry LLC, Portland, Oregon, for Defendant-Appellant.

S. Amanda Marshall, United States Attorney, District of Oregon; Kelly A. Zusman (argued), Appellate Chief, Assistant United States Attorney, Portland, Oregon, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

FISHER, Circuit Judge:

After a five-day trial, a federal jury convicted Johnny Brown of 14 counts of wire fraud, making false statements to a financial institution and tax evasion. While the jury was deliberating, one of the jurors became ill and asked to be excused. Brown requested that the district court seat an alternate juror rather than proceed with 11 jurors. The court denied Brown's request, excused the juror and directed the 11-person jury to continue its deliberations, citing Federal Rule of Criminal Procedure 23(b)(3). Later that day, the jury returned a guilty verdict.

Brown argues Rule 23(b)(3) does not authorize a court to proceed with 11 jurors over a defense objection when alternates are available. Alternatively, he argues the court abused its discretion by proceeding with 11 jurors rather than seating an alternate here, because the trial and deliberations had been brief.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm. We hold courts have discretion under Rule 23(b)(3) to proceed with 11 jurors after excusing a juror for good cause during deliberations, even when alternates are available. We also hold the court did not abuse its discretion by proceeding with 11 jurors. The jury had deliberated for more than a day and had asked and received answers to five substantive questions. If the court had seated an alternate, it would have had to direct the jury to begin deliberations anew, *see* Fed. R. Crim. P. 24(c)(3), adding at least a day to the

proceedings and imposing on the jurors the difficult task of discarding any conclusions they had already reached.[1]

**BACKGROUND**

Brown was charged with seven counts of wire fraud, six counts of making false statements to a financial institution and one count of tax evasion. The charges for wire fraud and false statements to a financial institution arose from a scheme through which Brown generated roughly $5 million in fraudulent sales transactions by swiping 596 credit cards belonging to 154 people through a credit card machine provided to his business by U.S. Bank.

Brown pled not guilty and proceeded to a jury trial. The court seated 12 jurors and two alternates. The trial lasted five days. The government called 26 witnesses and introduced 80 exhibits. When the 12 jurors began deliberations, the court allowed the two alternates to leave. The court, however, did not discharge them:

> At this point you will not go into the jury room, but you continue to be alternates until the jury is dismissed. So in the event that something happened to one of the jurors and they couldn't continue, you would be called to step in. Now, for that reason, you must continue to follow the instructions I've given you about not making any decision in the case, not talking to anyone about the case. . . . Just continue to follow these instructions. We

---

[1] We address Brown's remaining arguments in a concurrently filed memorandum disposition.

will advise you immediately if you are needed, and we will advise you when the jury reaches a verdict. If they reach a verdict, we'll advise you that you can be excused. So at this point, you're not discharged, but you may leave, and we'll call you if we need you.

During deliberations, the jury posed five substantive questions to the court. The court convened the parties' counsel by teleconference and prepared responses. After one day of deliberations, a juror became ill and asked to be excused. The next morning, the court informed the parties' counsel of the issue and asked if they would stipulate to an 11-person jury under Rule 23(b)(2).[2]   The government

---

[2] Rule 23(b) states:

> (1) In General. A jury consists of 12 persons unless this rule provides otherwise.
>
> (2) Stipulation for a Smaller Jury. At any time before the verdict, the parties may, with the court's approval, stipulate in writing that:
>
> (A) the jury may consist of fewer than 12 persons; or
>
> (B) a jury of fewer than 12 persons may return a verdict if the court finds it necessary to excuse a juror for good cause after the trial begins.
>
> (3) Court Order for a Jury of 11. After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror.

Fed. R. Crim. P. 23(b).

agreed, but the defense objected. The defense requested that the court instead seat an alternate, arguing, "[i]t's taken years to get . . . to trial, and to add a day to deliberations for an alternate to be brought up to . . . speed does not seem particularly onerous to me." The court disagreed, saying, "[i]f we bring [the alternate jurors] back, we've got to run them down, get them back, and the jury has to start over. . . . And we have 14 counts. And if this jury, for example, has made decisions on any number of counts, let's say 12 or 13 or whatever, that goes out the window and they've got to start over with the alternate and have discussions and then vote on it."

The court then questioned the ill juror, and both parties agreed she should be excused. The court excused the juror, and then concluded, "based on the authority granted in Rule 23(b)(3) and based on the circumstances that we have on the record, I will instruct the jury to continue deliberating with 11 and that all 11 members of the jury must agree on the verdict." Later that day, the 11-member jury returned a guilty verdict on all 14 counts. Brown appeals.

## STANDARD OF REVIEW

We review de novo a district court's interpretation of the Federal Rules of Criminal Procedure. *See United States v. Fort*, 472 F.3d 1106, 1109 (9th Cir. 2007). We review for an abuse of discretion a court's decision to proceed with 11 jurors under Federal Rule of Criminal Procedure 23(b)(3). *See United States v. Egbuniwe*, 969 F.2d 757, 758, 760–61 (9th Cir. 1992).

## DISCUSSION

The Sixth Amendment guarantees a criminal defendant's right to a jury trial. *See Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). It does not, however, guarantee a criminal defendant's right to a jury of 12 persons. *See Williams v. Florida*, 399 U.S. 78, 100–03 (1970). In 1946, however, Federal Rule of Criminal Procedure 23 went into effect, guaranteeing 12-person juries in federal criminal trials, absent a stipulation by the parties to a jury of fewer than 12 persons. *See* Fed. R. Crim. P. 23(b) (1946). Before Rule 23 was adopted, Federal Rule of Criminal Procedure 24 required courts to discharge alternate jurors when the jury retired to deliberate. *See* Fed. R. Crim. P. 24(c) (1946); *United States v. Mullins*, 992 F.2d 1472, 1478 (9th Cir. 1993) (quoting 2 Charles A. Wright, *Federal Practice & Procedure*, § 388 at 390 (1982)). Therefore, if a juror was excused during deliberations and the parties did not stipulate to a jury of fewer than 12 persons, the court was required to declare a mistrial.

In 1983, Rule 23(b) was amended to provide district courts discretion to proceed with 11 jurors after excusing a juror for good cause during deliberations, even without a stipulation by the parties. *See* Fed. R. Crim. P. 23(b)(3). The purpose of this amendment was to provide courts an alternative to declaring a mistrial, particularly after long trials, when "the remedy of mistrial would necessitate a second expenditure of substantial prosecution, defense and court resources." Fed. R. Crim. P. 23(b) advisory committee's notes (1983 amendment).

The 1983 advisory committee declined to amend Rule 24 to allow courts to retain alternates after deliberations have begun, explaining:

> [I]t is far better to permit the deliberations to continue with a jury of 11 than to make a substitution at that point. . . . Even were it required that the jury "review" with the new juror their prior deliberations or that the jury upon substitution start deliberations anew, it still seems likely that the continuing jurors would be influenced by the earlier deliberations and that the new juror would be somewhat intimidated by the others by virtue of being a newcomer to the deliberations.

*Id*.

Notwithstanding these concerns, Rule 24(c) was amended in 1999 to give district courts discretion to retain alternates after deliberations have begun. *See* Fed. R. Crim. P. 24(c)(3).[3] This amendment was designed to provide courts an

---

[3] Rule 24(c) states:

(c) Alternate Jurors.

(1) In General. The court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties.

(2) Procedure.

(A) Alternate jurors must have the same qualifications and be selected and sworn in the same manner as any other juror.

additional alternative to declaring a mistrial after excusing a juror during deliberations.  The advisory committee did not provide clear guidance for district courts when choosing among these options.  It said only:

> Rule 23(b) provides that in some circumstances a verdict may be returned by eleven jurors.  In addition, there may be cases where it is better to retain the alternates when the jury retires, insulate them from the deliberation process, and have them available should one or more vacancies occur in the jury.  That might be especially appropriate in a long, costly, and complicated case.  To that end the Committee believed that the court should have the discretion to decide whether to retain or discharge the alternates at the time the jury retires to deliberate and to use Rule 23(b) to proceed with eleven jurors or to

---

> (B) Alternate jurors replace jurors in the same sequence in which the alternates were selected.  An alternate juror who replaces a juror has the same authority as the other jurors.

> (3) Retaining Alternate Jurors.  The court may retain alternate jurors after the jury retires to deliberate.  The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged.  If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew.

Fed. R. Crim. P. 24(c)(1)–(3).

substitute a juror or jurors with alternate jurors who have not been discharged.

Fed. R. Crim. P. 24(c) advisory committee's notes (1999 amendment).

Thus, as currently constituted, the Rules provide courts three options after excusing a juror for good cause during deliberations: (1) declare a mistrial; (2) proceed with 11 jurors; or (3) seat an alternate. Brown contends Rule 23(b) does not authorize the court to proceed with 11 jurors when alternates are available. In the alternative, he argues even if such authority exists, the court abused its discretion by exercising it here. We reject both arguments.

## I.   District courts have discretion under Rule 23(b)(3) to proceed with 11 jurors after excusing a juror for good cause during deliberations, even when alternates are available

We reject Brown's contention that the Rules preclude a court from proceeding with 11 jurors when alternates are available. First and foremost, his interpretation finds no support in the plain language of Rule 23(b)(3). Rule 23(b)(3) expressly authorizes a court to proceed with 11 jurors after a juror is excused for good cause during deliberations, and nothing in the language of Rule 23 or Rule 24 precludes a court from exercising that authority when alternates are available.

Second, the advisory committee's notes to Rules 23 and 24 do not suggest otherwise. Brown relies on the 1983 advisory committee's notes to Rule 23, which say Rule 23 was amended to allow for 11-juror verdicts to address the

"situation . . . in which, after the jury has retired to consider its verdict *and any alternate jurors have been discharged*, one of the jurors is seriously incapacitated or otherwise found to be unable to continue service upon the jury." Fed. R. Crim. P. 23(b) advisory committee's notes (1983 amendment) (emphasis added). Brown argues the notes show Rule 23(b) was intended to apply only when alternate jurors have been discharged.

When the advisory committee drafted this language in 1983, though, alternate jurors had to be discharged before deliberations began. *See Mullins*, 992 F.2d at 1478. The 1983 notes, therefore, merely recognized that the amendment to Rule 23(b) was intended to give courts an alternative to declaring a mistrial. They did not suggest that, if a subsequent rule change were to give courts the additional alternative of retaining alternates during deliberations, courts would have to seat available alternates rather than proceed with 11 jurors. Furthermore, the 1999 advisory committee's notes to Rule 24(c) confirm that a court that has elected to retain alternates "should have the discretion" to "use Rule 23(b) to proceed with eleven jurors *or* to substitute a juror or jurors with alternate jurors who have not been discharged." Fed. R. Crim. P. 24(c)(3) advisory committee's notes (1999 amendment) (emphasis added).

Finally, two circuits that have addressed this question have agreed that a court retains discretion to proceed with 11 jurors even when alternates are available. *See United States v. Hively*, 437 F.3d 752, 766–67 (8th Cir. 2006) (affirming district court's decision to proceed with 11 jurors rather than seat an alternate); *United States v. Levenite*, 277 F.3d 454, 464–65 (4th Cir. 2002) (same).

In light of the plain language of Rules 23 and 24, as well as the advisory committee's notes, we join these circuits and hold a district court has discretion to proceed with 11 jurors after excusing a juror during deliberations, even when alternates are available.

## II.  The court did not abuse its discretion by proceeding with 11 jurors

We also hold the district court permissibly exercised its discretion by proceeding with 11 jurors after excusing a juror for good cause, rather than seating an alternate.  The jury had deliberated for over a day following a five-day trial.  The jury had asked five substantive questions, and the court and parties had spent significant time considering and responding to them.  The jury returned a verdict within a few hours after the ill juror was excused.  As the district court explained, the case involved 14 counts, and after a day of deliberations the jury might well have decided certain issues:

> [I]f we call the alternates, they've got to start over with whatever count they began with, with these alternates, and go through a process. So we're talking about a fair amount of time to bring – to get the alternates in and to bring them up to date. . . .  And we have 14 counts.  And if this jury, for example, has made decisions on any number of counts, let's say 12 or 13 or whatever, that goes out the window and they've got to start over with the alternate and have discussions and then vote on it.

This was a reasonable assessment of the situation. If the court had substituted an alternate, the jury would have been required to begin deliberations anew, discarding the substantial work it, the parties and the court had done. *See Hively*, 437 F.3d at 766–67 (affirming an 11-juror verdict when a juror was excused after a day and a half of deliberations, explaining "[t]he case involved multiple counts for the jury to consider, and the district court worried that the original twelve jurors might have already decided factual issues"); *Levenite*, 277 F.3d at 464–65 (affirming an 11-juror verdict when a juror was excused after two days of deliberations in a complex case involving several defendants and counts).[4]

The jurors also would have had to attempt to disregard any conclusions they had reached on any of the 14 counts at issue. To be sure, Rule 24 requires courts to instruct juries to begin deliberations anew, *see* Fed. R. Crim. P. 24(c)(3), and we generally presume that juries follow a court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).[5]

---

[4] Brown's reliance on *United States v. Tabacca*, 924 F.2d 906, 914–15 (9th Cir. 1991), is misplaced. In *Tabacca*, the district court had excused a juror and allowed an 11-juror verdict. On appeal, we did not address whether the court abused its discretion by failing to seat an available alternate. Indeed, because the trial occurred before the 1999 amendment to Rule 24, the court was required to discharge alternates when deliberations began. *See Mullins*, 992 F.2d at 1478. Instead, we held there was an absence of "just cause" under Rule 23(b)(3) to excuse the juror, because he likely would have been able to return after a one-day absence. *Tabacca*, 924 F.2d at 914–15. Here, Brown concedes there was good cause to excuse the twelfth juror. *Tabacca* is inapposite.

[5] Ninth Circuit Model Criminal Jury Instruction 7.12 recognizes at least part of the challenge the jury faces in starting deliberations anew: "Although starting over may seem frustrating, please do not let it

Nonetheless, it has been widely recognized that jurors may not be able to set aside their conclusions and that an alternate may be intimidated, choosing to go along with other jurors' views rather than exercise independent judgment. *See, e.g.*, *United States v. Lamb*, 529 F.2d 1153, 1156 (9th Cir. 1975) (en banc) ("The inherent coercive effect upon an alternate juror who joins a jury that has . . . already agreed that the accused is guilty is substantial."); *Hively*, 437 F.3d at 767 ("While [the court] could have instructed the jury to start its deliberations anew after seating an alternate, the court was concerned that thirteen jurors could potentially be involved in deciding issues and that this would undermine the validity of any verdict."); Fed. R. Crim. P. 23(b) advisory committee's notes (1983 amendment) (recognizing, even after receiving an instruction to begin deliberations anew, jurors may be "influenced by the earlier deliberations," and the alternate may be "somewhat intimidated by the others by virtue of being a newcomer to the deliberations").

We are not persuaded by Brown's argument that, "[b]y adopting" the amendment to Rule 24(c) that allows the substitution of alternates during deliberations, "Congress also rejected" these concerns. The 1999 advisory committee's notes to Rule 24(c) do not address the concerns the prior committee had expressed in 1983. The rules appear simply to give courts the discretion to weigh the concerns against other issues presented in individual cases. The extent of the

---

discourage you. It is important that each juror have a full and fair opportunity to explore his or her views and respond to the views of others so that you may come to a unanimous verdict. All the previous instructions given to you, including the unanimity requirement for a verdict, remain in effect." Ninth Circuit Model Criminal Jury Instruction 7.12.

risks associated with seating an alternate juror will vary from case to case. When deliberations have been extended, jurors are more likely to have reached firm conclusions on certain issues, and alternates may be at a greater risk of intimidation. When deliberations have been brief, those risks are likely reduced.[6]

Here, the jury had deliberated for over a day in a complex case involving 14 counts. Significantly, the jury had asked and received answers to five substantive questions. Substituting an alternate likely would have imposed substantial additional work on the jury, the parties and the court. It also would have required the jurors to attempt to clear their minds of any conclusions they had reached. The court weighed these considerations and concluded that "justice would best be served by proceeding with a jury of 11 individuals." Under these circumstances, the district court did not abuse its discretion.[7]

---

[6] In cases occupying neither extreme, a district court's decision either to seat an alternate juror or to proceed with 11 jurors may not be an abuse of discretion. We do not suggest the facts of this case required the district court to chart a particular course, merely that the decision it made was not "illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

[7] Brown does not argue the district court abused its discretion by opting to proceed with 11 jurors rather than declaring a mistrial. *See* Fed. R. Crim. P. 23(b) advisory committee's notes (1983 amendment) (explaining that when a "trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken," and instead declare a mistrial). We therefore do not address that issue.

## CONCLUSION

We affirm the judgment of the district court.

**AFFIRMED.**